## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Sylva Corporation, Inc., <br><br> Plaintiff, <br><br> v. <br><br> SafetyFirst Specialty Contracting, Inc., <br><br> Defendant. | Court File No. _____ <br><br><br> **COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff Sylva Corporation, Inc., a Minnesota corporation, for its Complaint against Defendant SafetyFirst Specialty Contracting, Inc., a Minnesota corporation, alleges the following:

### PARTIES

1.    Plaintiff Sylva Corporation, Inc., is a corporation registered under the laws of Minnesota with its principal place of business located at 900 Airport Road, Princeton, Minnesota 55371.

2.    Defendant SafetyFirst Specialty Contracting, Inc. ("SafetyFirst"), is a corporation registered under the laws of Minnesota with its registered office located at 31095 Baugh Street NW, Princeton, MN 55371.

### VENUE AND JURISDICTION

3.    Venue is proper in this Court because Defendant is a business entity with its principal place of business in Minnesota.  28 U.S.C. § 1391.

4.    The Court has *in personam* jurisdiction over Defendant because it is a business entity registered in the State of Minnesota.

5.      Plaintiff brings this case pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).   As such, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

## FACTUAL ALLEGATIONS

***I.      Ensuring playgrounds are accessible to children and caregivers with ambulatory disabilities is not only required by law but paramount to providing all children with equal opportunities to reap the benefits of outdoor play.***

6.      The playground is a quintessential part of childhood in America.

7.      Playgrounds serve as community spaces, offering children opportunities for unstructured outdoor play.

8.      Unstructured outdoor play has many benefits for children.  It has been shown to improve social skills, reduce stress and anxiety, enhance cooperation, decrease conflict, and increase physical activity.

9.      Unfortunately, playgrounds were historically inaccessible to children and caregivers with ambulatory disabilities, with the first playgrounds built upon sand.

10.     Inaccessible playground surfaces inhibit children with ambulatory disabilities from reaping the benefits of playgrounds enjoyed by their non-disabled peers.

11.     Inaccessible playground surfaces also inhibit children with caregivers with ambulatory disabilities from participating equally in unstructured outdoor play.

12.     Playgrounds with surfaces that are difficult to ambulate through with canes, crutches, walkers, or wheelchairs prevent children and caregivers with ambulatory disabilities from enjoying these community spaces.

2

13.     In 1990, the U.S. passed the Americans with Disabilities Act ("ADA") which prohibited the discrimination against people with disabilities in many facets of everyday life, including playgrounds.

14.     The ADA requires newly constructed and altered state and local places of public accommodation to be readily accessible to, and usable by, individuals with disabilities.  Places of public accommodation includes recreational facilities, such as playgrounds.

15.     Playgrounds owned and operated by state and local governments are required to comply with standards set forth by the American Society for Testing Materials ("ASTM").

16.     In particular, playgrounds owned and operated by state and local governments are required to install playground surface materials that meet ASTM standard F1292-99/04, related to resiliency for falls, and ASTM standard 1951-99 ("ASTM 1951"), related to ensuring accessibility of playground surfaces.

17.     Playgrounds owned by state and local municipalities require their playground surfaces to comply with these ASTM standards.

18.     In order to prove that playground surface materials comply with ASTM 1951, playground surface material manufacturers send samples of the playground surface material to laboratories for testing.

19.     The ASTM 1951 laboratory test measures the work force required for an individual in a manual wheelchair to propel across the subject playground surface material. The work force is evaluated through two measurements: (1) the force required to propel

3

the wheelchair over a distance of approximately 6.5 feet in a straight line and (2) the force required to accomplish a 90-degree turn on the playground surface material.  (Collectively, "Straight-Line and Turning Propulsion Tests".)

20.     In addition to public entities requiring playground surface materials to comply with ASTM 1951, many private entities also desire their playgrounds to be accessible and therefore similarly seek to install playground surface materials that comply with ASTM 1951.

## II.     *SafetyFirst deceptively advertises its Nature'sPlus engineered wood fiber playground surfacing product as compliant with ASTM 1951.*

21.     SafetyFirst is a playground surface material manufacturer.

22.     SafetyFirst sells an engineered wood fiber ("EWF") for playground surfacing under the trade name Nature'sPlus.

23.     SafetyFirst represents on its website that its Nature'sPlus material "passes … ASTM 1951 for ADA Accessibility."  (*See* https://safetyfirstplayground.com/naturesplus-the-reimagined-playground-surfacing-option/.)

24.     This representation is not true.

25.     SafetyFirst also represents on its website that its Nature'sPlus material is "ADA compliant."  (*See*  https://safetyfirstplayground.com/shop/surfacing/naturesplus-ewf/.)

26.     This representation is also not true.

27.     Generally, playground surface material manufacturers do not retest playground surface materials once tested.

4

28.     In 2011, SafetyFirst sent its Nature'sPlus product to a lab in Dalton, Georgia to be tested.

29.     While the test report indicates that the company that tested the Nature'sPlus product is called Testing Services, Inc., the address and phone number listed on the test report appear to be affiliated with a company called Testing Services (TSI), LLC—a company registered under the laws of Georgia.[1]

30.     Testing Services LLC shall hereinafter be referred to as "TSI."

31.     TSI does not appear to specialize in testing EWF to ASTM 1951 standards.

32.     Instead, TSI's website appears to focus on the testing of "Athletic Surfaces", which do not appear to include EWF.   (*See https://www.testingservices.us/on-site-atheletic-surfaces*.)

33.     Nevertheless, TSI performed a test on the Nature'sPlus product to determine whether it complied with ASTM 1951.

34.     While the Nature'sPlus product may have passed whatever test TSI subjected the EWF material to, the test TSI conducted did not conform to the ASTM 1951 standards for testing.

35.     For example, ASTM 1951 requires the wheelchair used in the test to be 31-35.4 pounds.

---

[1] Testing Services, Inc. appears to be a different company registered under the laws of Pennsylvania.

36.     The wheelchair used in TSI's test of the Nature'sPlus material was only 24.25 pounds.

37.     ASTM 1951 also requires the test surface to be 4 feet—or 48 inches—wide.

38.     The test surface prepared by TSI was only 44 inches wide.

39.     ASTM 1951 requires the surface to be "installed per the manufacturers' installation instructions" and prohibits "additional compaction or other modification[s.]"

40.     Upon information and belief, TSI did not install the Nature'sPlus product per SafetyFirst's installation instructions.

41.     While SafetyFirst does not make its installation instructions available online, like many other playground surface material manufacturers, there are industry standards to which playground surface material manufacturers generally conform.

42.     Upon information and belief, SafetyFirst conforms to the industry standards for installation of playground surface materials with respect to the installation of its Nature'sPlus product.

43.     The most common depth of playground surface material under and around playground equipment in the United States is 12 inches.  As such, most playgrounds require 12 inches of playground surface material.

44.     TSI used only a 9-inch depth of the Nature'sPlus material during its test.

45.     Less depth increases the chances of an EWF product passing the Straight-Line and Turning Propulsion Tests because less depth results in a firmer surface.

46.     The standard in the industry for installation of EWF is to fill the playground surface with the EWF to a depth of 12 inches and then use minimal to no compression to complete the installation.  No water is generally used during installation of EWF.

47.     TSI installed the Nature'sPlus material for the test by installing Nature'sPlus "in increments of 2[inches] and compact[ing] using a water-filled lawn roller until it reached a compacted depth of 9.0[inches].  The material was dampened to reach an average moisture content between 18-20 percent per the client's instructions."

48.     Upon information and belief, SafetyFirst's installation instructions for its Nature'sPlus product do not instruct consumers to install the material "in increments of 2[inches]."

49.     Upon information and belief, SafetyFirst's installation instructions for its Nature'sPlus product do not instruct consumers to use a water-filled lawn roller to compact the Nature'sPlus material in 2-inch layers during the installation process.

50.     Upon information and belief, SafetyFirst's installation instructions for its Nature'sPlus product do not instruct consumers to "dampen[]" the Nature'sPlus product "to reach an average moisture content between 18-20 percent."

51.     Each of these installation protocols gave Nature'sPlus a better chance of passing the Straight-Line and Turning Propulsion Tests.

52.     Installing EWF in increments of 2 inches and compressing with a water-filled lawn roller before adding 2 more inches will render the EWF product firmer and, therefore, more likely to pass the Straight-Line and Turning Propulsion Tests.

53.     Wetting the EWF to a certain moisture content will also render the EWF product firmer and, therefore, more likely to pass the Straight-Line and Turning Propulsion Tests.

54.     Since the testing performed by TSI, SafetyFirst has installed its Nature'sPlus product in many playgrounds and parks throughout Minnesota and other states for local and state government entities as well as private entities.

55.     Given SafetyFirst's advertising, each of these customers believed they were installing an EWF material that passed ASTM 1951 and compliant with ADA.

56.     Unfortunately, they were not.

***III.   Sylva Corporation, Inc. manufactures EWF that passes ASTM 1951 and complies with the ADA and is harmed by SafetyFirst's false advertising and deceptive trade practices.***

57.     Sylva Corporation, Inc. ("Sylva") is a manufacturer of bulk mulch, bagged mulch, bagged soil, and a proprietary EWF called SoftStep®.

58.     Sylva has installed SoftStep® as a playground surfacing material for both private and public playgrounds.

59.     SoftStep® passes ASTM 1951 and is ADA compliant.

60.     Generally, when a public entity seeks to contract with a vendor of playground surface materials, such as Sylva, it sends out a public request for proposal ("RFP").

61.     Many companies can submit materials in response to the RFPs to "bid" on the project.

62.     Many times, both Sylva and SafetyFirst have submitted competing bids to install their respective EWF products in response to public RFPs.

63.     These RFPs have required the playground surfacing materials to pass ASTM 1951 and be ADA compliant.

64.     On more than one occasion, the public entity seeking the bids has selected SafetyFirst to install its Nature'sPlus product over selecting Sylva to install its SoftStep® product.

65.     Upon information and belief, SafetyFirst misrepresents in its bids that its Nature'sPlus product passes ASTM 1951 and is ADA compliant.

66.     Upon information and belief, if the public entities that selected SafetyFirst to install Nature'sPlus knew that the product did not pass ASTM 1951 and was not ADA compliant those public entities would not have selected SafetyFirst.

67.     Upon information and belief, if the public entities that selected SafetyFirst to install Nature'sPlus knew that the product did not pass ASTM 1951 and was not ADA compliant, those public entities may have instead selected Sylva to install SoftStep®.

68.     SafetyFirst's misrepresentations have, thus, proximately caused Sylva damage.

69.     SafetyFirst's misrepresentations have also damaged consumers and governmental entities that believed they were installing an EWF product that passed ASTM 1951 and was ADA compliant.

70.     More importantly, however, SafetyFirst's misrepresentations have damaged children and caregivers with ambulatory disabilities who sought to access the benefits of public playgrounds but were unable to do so because of the inaccessible quality of the Nature'sPlus material.

71.     SafetyFirst's misrepresentations continue to this day and continue to cause damage to Sylva, consumers, and the public.   Without injunctive relief, SafetyFirst's deceptive trade practices and false advertising will continue to harm Sylva, consumers, and the public.

## CAUSES OF ACTION

### COUNT I
### Minnesota Unlawful Trade Practices

72.     Plaintiff incorporates all paragraphs in this Complaint as if fully set forth herein.

73.     Minnesota Statute § 325D.13 prohibits misrepresentation of the quality of merchandise in connection with the sale of the merchandise. Any person damaged or threatened with loss, damage, or injury by reason of a violation of § 325D.13 may sue for actual damages sustained and injunctive relief. Minn. Stat. § 325D.15.

74.     On information and belief, SafetyFirst knows that Nature'sPlus does not pass ASTM 1951 and its Nature'sPlus product is not ADA compliant for surfacing playgrounds.

75.     SafetyFirst misrepresents the true quality of its Nature'sPlus product by falsely claiming to the public that Nature'sPlus "passes … ASTM 1951 for ADA Accessibility."

76.     SafetyFirst misrepresents the true quality of its Nature'sPlus product by falsely claiming to the public that Nature'sPlus is "ADA compliant" for surfacing playgrounds.

77.     Passing or failing to pass ASTM 1951 is a "quality" of playground surfacing products that is material to the purchasing decisions of customers, many of whom consider passing ASTM 1951 as a requirement or a highly important factor in their decision of which playground surface material to purchase.

78.     ADA compliance or noncompliance is a "quality" of a playground surfacing product that is material to the purchasing decisions of customers, many of whom consider ADA compliance as a requirement or a highly important factor in their decision of which playground surface material to purchase.

79.     SafetyFirst uses its misrepresentations concerning Nature'sPlus to promote to the public the sale and use of Nature'sPlus. SafetyFirst intends that the public rely upon its misrepresentations when deciding which playground surfacing product to purchase.

80.     SafetyFirst's misrepresentations concerning Nature'sPlus violate Minn. Stat. § 325D.13.

81.     As a result of SafetyFirst's misrepresentations concerning Nature'sPlus, Sylva has been harmed by customers purchasing Nature'sPlus instead of SoftStep®. On information and belief, whether a playground surfacing material passes ASTM 1951 and is ADA compliant for playground surfacing is material to a customer of playground surface materials when determining which product to buy.  Upon information and belief, Sylva would have sold additional quantities of SoftStep®, profiting thereby, if SafetyFirst did not misrepresent the true quality of Nature'sPlus, because SoftStep® meets quality requirements of customers that Nature'sPlus does not—principally SoftStep® passed ASTM 1951 and is ADA compliant for playground surfaces.

11

82.     As a result of SafetyFirst's misrepresentations concerning its Nature'sPlus product, Sylva continues to be threatened with future harm as a result of future buyers purchasing Nature'sPlus instead of SoftStep®, where those buyers would not have purchased Nature'sPlus if they had known the true quality of Nature'sPlus.

83.     Additionally, as a result of SafetyFirst's misrepresentations concerning the quality of Nature'sPlus, SafetyFirst's customers have been harmed.  Governmental entities are required to install playground surfacing material which passes ASTM 1951 and is ADA compliant.   SafetyFirst has harmed governmental entities that have purchased the Nature'sPlus product through misrepresenting that the Nature'sPlus product contained qualities which it does not—namely, that it passes ASTM 1951 and is ADA compliant.

84.     As a result of SafetyFirst's misrepresentations concerning the quality of Nature'sPlus, members of the public with ambulatory disabilities have been harmed.  Upon information and belief, children with disabilities which require devices to ambulate safely were prevented from accessing playgrounds which used Nature'sPlus for the surfacing material.  Additionally, upon information and belief, caregivers of children with disabilities which require devices to ambulate safely were similarly prevented from accessing playgrounds which used Nature'sPlus for the surfacing material.

85.     Pursuant to Minn. Stat. § 325D.15, Sylva is entitled to an award of monetary damages in the amount of the profits it has lost as a result of SafetyFirst's misrepresentations, in an amount exceeding $50,000 to be proved at trial.

86.     Pursuant to Minn. Stat. § 325D.15, Sylva is entitled to injunctive relief prohibiting SafetyFirst from claiming or implying that Nature'sPlus passes ASTM 1951 or is ADA compliant for use as a playground surface.

87.     Pursuant to Minn. Stat. § 8.31 subd. 1 & subd. 3a, Sylva is entitled to recover its damages, costs, and disbursements including costs of investigation and attorneys' fees, and other equitable relief, including disgorgement of profits, as determined by the court, for bringing this action under the Minnesota Unlawful Trade Practices Act. The public is benefited by this action because the relief requested will protect buyers of playground surfaces from paying for and installing Nature'sPlus, a non-ADA compliant surface that does not pass ASTM 1951, where these buyers intend to install a playground surface that is ADA compliant and does pass ASTM 1951 and wrongly believe that Nature'sPlus satisfies these criteria.  Additionally, the public is benefited by this action because the relief requested will protect children and caregivers with ambulatory disabilities from playground surfaces that are not ADA compliant and do not pass ASTM 1951. This action will also cause an increase in the number of ADA-compliant and accessible playgrounds, thereby furthering public policy as established by the ADA. Finally, SafetyFirst offers its product to the public generally, advertises to the public, and its misrepresentations tend to cause the public to form inaccurate beliefs concerning the requirements of the ADA and what satisfies the requirements of the ADA.

## <u>COUNT II</u>
### Minnesota Uniform Deceptive Trade Practices Act

88.     Plaintiff incorporates all paragraphs in this Complaint as if fully set forth herein.

89.     Pursuant to Minn. Stat. § 325D.44 subd. 1(5), representing in the course of a business, vocation, or occupation that goods have approval, characteristics, or benefits is a deceptive trade practice if the goods do not have the represented approval, characteristics, or benefits. SafetyFirst's misrepresentations concerning Nature'sPlus are representations in the course of a business that Nature'sPlus has approval, characteristics, and benefits that Nature'sPlus does not have. For that reason, SafetyFirst's misrepresentations concerning Nature'sPlus are a deceptive trade practice.

90.     Pursuant to Minn. Stat. § 325D.44 subd. 1(7), representing in the course of a business, vocation, or occupation that goods are of a particular standard, quality, or grade is a deceptive trade practice if the goods are of another standard, quality, or grade. SafetyFirst's misrepresentations concerning Nature'sPlus are representations in the course of a business that Nature'sPlus is of a particular standard, quality, and grade when Nature'sPlus is of another standard, quality, and grade. For that reason, SafetyFirst's misrepresentations concerning Nature'sPlus are a deceptive trade practice.

91.     Pursuant to Minn. Stat. § 325D.44 subd. 1(14), engaging in any conduct which similarly creates a likelihood of confusion or of misunderstanding is a deceptive trade practice. SafetyFirst's misrepresentations concerning Nature'sPlus create a likelihood of confusion or misunderstanding that Nature'sPlus passes ASTM 1951 and is

ADA compliant for use as playground surfacing. For that reason, SafetyFirst's misrepresentations concerning Nature'sPlus are a deceptive trade practice and violate § 325D.44.

92.   Pursuant to Minn. Stat. § 325D.45 subd. 1, a person likely to be damaged by a deceptive trade practice of another may be granted an injunction against the deceptive trade practice.

93.   SafetyFirst's misrepresentations concerning Nature'sPlus have been made in commercial advertising and promotion, and misrepresent the approval, characteristics, and benefits of Nature'sPlus.

94.   On information and belief, SafetyFirst's misrepresentations concerning Nature'sPlus have actually deceived, and tend to deceive, a substantial segment of the public that investigates purchasing a playground surfacing material.

95.   SafetyFirst's misrepresentations concerning Nature'sPlus are material to important criteria the public uses to evaluate playground surfacing material – whether the product complies with the requirements of the ADA and passes ASTM 1951 – and are likely to influence purchasing decisions of members of the public for this reason.

96.   On information and belief, SafetyFirst has made and continues to make its misrepresentations concerning Nature'sPlus with the intent that others rely on the misrepresentations and thereby choose to purchase Nature'sPlus merchandise from SafetyFirst.

97.   As a result of SafetyFirst's deceptive trade practices concerning Nature'sPlus, Sylva is likely to be damaged in the future. SafetyFirst's deceptive trade

15

practices cause customers to purchase Nature'sPlus instead of SoftStep®, where the customers would have purchased SoftStep® in the absence of SafetyFirst's deceptive trade practices, because SafetyFirst's misrepresentations are material to the purchasing decisions of customers and SoftStep® meets requirements of customers that Nature'sPlus does not. If SafetyFirst continues its deceptive trade practices, Sylva will lose profits that Sylva otherwise would have earned through sales of SoftStep®.

98.    As a result of SafetyFirst's deceptive trade practices concerning Nature'sPlus, customers of SafetyFirst as well as children and caregivers with ambulatory disabilities are likely to be damaged in the future.

99.    Pursuant to Minn. Stat. § 325D.45 subd. 1, Sylva is entitled to injunctive relief prohibiting SafetyFirst from claiming or implying that Nature'sPlus passes ASTM 1951 or is ADA compliant for use as a playground surface material.

100.    Pursuant to Minn. Stat. § 325D.45 subd. 2, a person who succeeds in bringing a claim against the deceptive trade practice of another is entitled to recover costs and, if the party charged with the deceptive trade practice willfully engaged in the practice knowing it to be deceptive, attorneys' fees.

101.    On information and belief, SafetyFirst knows that Nature'sPlus does not pass ASTM 1951, and SafetyFirst knows that Nature'sPlus is not ADA compliant for surfacing playgrounds. SafetyFirst willfully engages in making misrepresentations about Nature'sPlus knowing these misrepresentations are deceptive, and SafetyFirst intends that the public rely upon its misrepresentations when deciding which playground surfacing product to purchase.

16

102.    Pursuant to Minn. Stat. § 325D.45 subd. 2, Sylva is entitled to an award of its costs and attorneys' fees incurred in bringing this action.

103.    Pursuant to Minn. Stat. § 8.31 subd. 1 & subd. 3a, Sylva is entitled to recover its damages, costs, and disbursements including costs of investigation and attorneys' fees, and other equitable relief, including disgorgement of profits, as determined by the court, for bringing this action under the Minnesota Uniform Deceptive Trade Practices Act. This is a claim to enforce Minnesota laws against false or fraudulent advertising. The public is benefited by this action because the relief requested will protect buyers of playground surfaces from paying for and installing Nature'sPlus, a non-ADA compliant surface that does not pass ASTM 1951, where these buyers intend to install a playground surface that is ADA compliant and does pass ASTM 1951 and wrongly believe that Nature'sPlus satisfies these criteria.  Additionally, the public is benefited by this action because the relief requested will protect children and caregivers with ambulatory disabilities from playground surfaces that are not ADA compliant and do not pass ASTM 1951. This action will also cause an increase in the number of ADA-compliant and accessible playgrounds, thereby furthering public policy as established by the ADA. Finally, SafetyFirst offers its product to the public generally, advertises to the public, and its misrepresentations tend to cause the public to form inaccurate beliefs concerning the requirements of the ADA and what satisfies the requirements of the ADA.

<u>COUNT III</u>
**Minnesota Prevention of Consumer Fraud Act**

104.    Plaintiff incorporates all paragraphs in this Complaint as if fully set forth herein.

105.    Pursuant to Minn. Stat. § 325F.69 subd. 1, the act, use, or employment of any fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, is enjoinable as provided in Minn. Stat. § 325F.70. Minn. Stat. § 325F.70 subd. 1 authorizes a court to enjoin the future commission of any practice prohibited by Minn. Stat. § 325F.69, upon proof that the defendant has engaged in such a practice.

106.    Minn. Stat. § 8.31 subd. 1 & subd. 3a authorize Sylva to bring this civil action for violation of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. 325F.69-.70, and recover Sylva's damages, costs, and disbursements including costs of investigation and attorneys' fees for bringing this action, and other equitable relief determined by the court.

107.    The public is benefited by this action because the relief requested will protect buyers of playground surfaces from paying for and installing Nature'sPlus, a non-ADA compliant surface that does not pass ASTM 1951, where these buyers intend to install a playground surface that is ADA compliant and does pass ASTM 1951 and wrongly believe that Nature'sPlus satisfies these criteria.  Additionally, the public is benefited by this action because the relief requested will protect children and caregivers with ambulatory

18

disabilities from playground surfaces that are not ADA compliant and do not pass ASTM 1951. This action will also cause an increase in the number of ADA-compliant and accessible playgrounds, thereby furthering public policy as established by the ADA. Finally, SafetyFirst offers its product to the public generally, advertises to the public, and its misrepresentations tend to cause the public to form inaccurate beliefs concerning the requirements of the ADA and what satisfies the requirements of the ADA.

108.    SafetyFirst's misrepresentations concerning Nature'sPlus are fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading statement and deceptive practices within the meaning of Minn. Stat. § 325F.69 subd. 1, and violate Minn. Stat. § 325F.69.

109.    On information and belief, SafetyFirst has made and continues to make its misrepresentations concerning Nature'sPlus with the intent that others rely on the misrepresentations and thereby choose to purchase Nature'sPlus merchandise from SafetyFirst.

110.    As a result of SafetyFirst's misrepresentations concerning Nature'sPlus, Sylva has been harmed by customers purchasing Nature'sPlus instead of SoftStep®. On information and belief, Sylva would have sold additional quantities of SoftStep®, profiting thereby, if SafetyFirst did not misrepresent Nature'sPlus, because SafetyFirst's misrepresentations are material to the purchasing decisions of customers and SoftStep® meets purchasing criteria of customers that Nature'sPlus does not.

111.    As a result of SafetyFirst's misrepresentations concerning Nature'sPlus, Sylva continues to be threatened with future harm as a result of future buyers purchasing

Nature'sPlus instead of SoftStep®, where those buyers would not have purchased Nature'sPlus if they had known the truth concerning Nature'sPlus.

112.   As a result of SafetyFirst's misrepresentations concerning Nature'sPlus, customers of SafetyFirst as well as children and caregivers with ambulatory disabilities continue to be threatened with future harm as a result of customers purchasing Nature'sPlus believing it to have passed ASTM 1951 and be ADA compliant when it is not.

113.   Pursuant to Minn. Stat. § 8.31 subd. 1 & subd. 3a, Sylva is entitled to recover its damages, costs, and disbursements including costs of investigation and attorneys' fees, and other equitable relief, including disgorgement of profits, as determined by the court, for bringing this action under the Minnesota Prevention of Consumer Fraud Act. Sylva is entitled to injunctive relief prohibiting SafetyFirst from claiming or implying that Nature'sPlus passes ASTM 1951 or is ADA compliant for use as a playground surface.

## COUNT IV
## Federal Lanham Act

114.   Plaintiff incorporates all paragraphs in this Complaint as if fully set forth herein.

115.   Pursuant to 15 U.S.C. § 1125(a), a person who, in connection with any goods, uses in commerce any false or misleading description of fact or false or misleading representation of fact which in commercial advertising or promotion misrepresents the nature, characteristics, or qualities of the goods, is civilly liable to any person who believes that he or she is or is likely to be damaged by such act.

116.   Nature'sPlus is a "good" within the meaning of 15 U.S.C. § 1125(a).

117.   SafetyFirst's misrepresentations concerning Nature'sPlus are false or misleading descriptions of fact, and false or misleading representations of fact, within the meaning of 15 U.S.C. § 1125(a).

118.   SafetyFirst's misrepresentations concerning Nature'sPlus have been made in commercial advertising and promotion, and misrepresent the nature, characteristics, and qualities of Nature'sPlus.

119.   On information and belief, SafetyFirst's misrepresentations concerning Nature'sPlus have actually deceived, and tend to deceive, a substantial segment of the public that investigates purchasing a playground surfacing material.

120.   SafetyFirst's misrepresentations concerning Nature'sPlus are material to important criteria the public uses to evaluate playground surfacing products – whether the product passes ASTM 1951 and complies with the requirements of the ADA – and are likely to influence purchasing decisions of members of the public for this reason.

121.   SafetyFirst has caused its misrepresentations concerning Nature'sPlus to enter interstate commerce by making them available to, and publishing them to, persons from inside and outside of Minnesota.

122.   On information and belief, SafetyFirst has made and continues to make its misrepresentations concerning Nature'sPlus with the intent that others rely on the misrepresentations and thereby choose to purchase Nature'sPlus merchandise from SafetyFirst.

123.   As a result of SafetyFirst's misrepresentations concerning Nature'sPlus, Sylva has been harmed by customers purchasing Nature'sPlus instead of SoftStep®. On

information and belief, Sylva would have sold additional quantities of SoftStep®, profiting thereby, if SafetyFirst did not misrepresent Nature'sPlus, because SafetyFirst's misrepresentations are material to the purchasing decisions of customers and SoftStep® meets purchasing criteria of customers that Nature'sPlus does not.

124.   As a result of SafetyFirst's misrepresentations concerning Nature'sPlus, Sylva continues to be threatened with future harm as a result of future buyers purchasing Nature'sPlus instead of SoftStep, where those buyers would not have purchased Nature'sPlus if they had known the truth concerning Nature'sPlus.

125.   As a result of SafetyFirst's misrepresentations, children and caregivers with ambulatory disabilities continue to be threatened with future harm as a result of customers purchasing Nature'sPlus believing it to have passed ASTM 1951 and be ADA compliant when it is not.

126.   Pursuant to 15 U.S.C. § 1125(a) and § 1117, Sylva is entitled to recover SafetyFirst's profits from violations of § 1125(a), Sylva's damages sustained, and the costs of this action. Sylva may recover as its damages sustained an amount up to three times its actual damages.  Sylva is also entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116 to prevent further violations of § 1125(a).

## **DEMAND FOR JURY TRIAL**

127.   Plaintiff requests jury trial with respect to all issues triable to a jury.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendant as follows:

1.  For injunctive relief enjoining SafetyFirst from representing that Nature'sPlus passes ASTM 1951;

2.  For injunctive relief enjoining SafetyFirst from representing that Nature'sPlus is ADA compliant;

3.  For damages to be entered against Defendant in favor of Plaintiff in an amount in excess of $50,000, with the exact amount to be proven at trial;

4.  For an order disgorging profits Defendant wrongfully obtained as a result of its deceptive trade practices and false advertising;

5.  For any other relief that may be awarded by the Court against Defendant under law or in equity;

6.  For an award to Plaintiff of their reasonable attorney fees, costs, and disbursements, including costs of investigation incurred herein as allowed by law;

7.  For an award of pre- and post-judgment interest; and

8.  For such other, further, and different relief as the Court deems fair, just, and equitable.


Dated: September 26, 2024            **PARKER DANIELS KIBORT LLC**

By: */s/Cody J. Blades*
      Christopher M. Daniels (#271809)
      Cody J. Blades (#0396341)
      888 Colwell Building
      123 N. Third Street
      Minneapolis, MN 55401
      Telephone: (612) 355-4100
      daniels@parkerdk.com
      blades@parkerdk.com

**ATTORNEYS FOR PLAINTIFF**